IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br>v.<br>**[2] DAVID RENATO NUNEZ-PEREZ,**<br>Defendant. | **CRIMINAL NO. 01-cr-519 (JAG)** |

### SUPPLEMENTAL BRIEFING AND RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS & DEFENDANT'S MOTION TO STAY THE REVOCATION AT ECF NO. 210 & 213

On August 16, 2024, this Honorable Court ordered the parties to submit a brief concerning the revocation of supervised release of the Defendant and the issue of jurisdiction in this case. (ECF No. 206). In compliance with this Court's order, the government filed its brief and addressed the issues raised in full. (ECF No. 211). The defendant filed a motion to dismiss for lack of jurisdiction or alternatively terminate the Defendant's supervised release term. (ECF No. 210). The defendant also filed a motion to stay the revocation proceedings pending a resolution of the motion to terminate the proceedings. (ECF No. 213). For the reasons set forth below, the government reaffirms its position as briefed in its motion and hereby opposes Defendant's motion to dismiss or stay the proceedings.

### DISCUSSION

18 U.S.C. § 3624(e) provides that "[t]he term of supervised release commences on the day the person is released from imprisonment." The Supreme Court considered this statute in *Johnson*, 529 U.S. 53 (2000). As the Supreme Court explained, the "ordinary, commonsense meaning" of the word "release" is "to be freed from confinement." *Id.* at 57. Relying on the

1

dictionary definition of "release"—that is, "[t]o loosen or destroy the force of; to remove the obligation or effect of; hence to alleviate or remove; . . . [t]o let loose again; to set free from restraint, confinement, or servitude; to set at liberty; to let go". The Court held that release meant to actually leave imprisonment. *Id.* (quoting Webster's New International Dictionary 2103 (2d ed. 1949)). To hold otherwise, would "diminish[] the concept the word intends to convey." *Id.*

In *Johnson*, the Supreme Court further noted that Congress could have drafted the statute differently, such as by stating "on the day the person is released or on the earlier day when he should have been released." *Id.* Instead, Congress was clear that "supervised release does not run during any period in which the person is imprisoned." *Id.* (quoting 18 U.S.C. § 3624(e)). The statute "suggests a strict temporal interpretation, not some fictitious or constructive earlier time." *Id.* The Court also found support in a related provision, 18 U.S.C. § 3583(a), which authorizes "a term of supervised release after imprisonment." *Id.* at 58 (quoting 18 U.S.C. § 3583(a)).

The Second Circuit addressed a similar issue in *US v. Figueroa* holding that supervised release begins upon actual release from imprisonment regardless of whether a defendant served excess time in prison. 765 F. App'x 505, 507 (2d Cir. 2019) ("The [defendant's] argument is defeated by Supreme Court precedent, which instructs that when a defendant has remained incarcerated beyond his lawful prison term, a reduction in his ensuing term of supervised release is not automatic…"); *see also*, *United States v. Hares Ajmal Ahmadzai*, 723 F.3d 1089, 1093 (9th Cir. 2013) ("Other circuits that have considered the issue have held that § 3624(e) automatically tolls a period of supervised release for state imprisonment.") (collecting cases); *United States v. Wimberly*, 368 Fed. Appx. 556, 558 (5th Cir. 2010) ("Because

Wimberly was imprisoned for more than 30 consecutive days in connection with a sentence imposed for his prior state conviction, his supervised release was tolled during this period of incarceration.").

The conclusion that Nunez-Perez's supervision did not begin until his release from state custody is consistent with the purpose and design of supervised release. "Congress intended supervised release to assist individuals in their transition to community life." *Id.* at 59. Supervised release thus serves "rehabilitative ends, distinct from those served by incarceration," including providing "individuals with postconfinement assistance." *Johnson*, 529 U.S. at 59-60. The goal of supervised release is "to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release." *Id.* at 59 (quoting S. Rep. No. 98-225, p. 124 (1983)).

Defendant cites to *United States v. Hernández-Ferrer*, 599 F.3d 63 (1st Cir. 2010), however, the case is distinguishable here because the First Circuit's analysis of § 3624(e) was in the context of a supervisee's fugitive status. Specifically, whether *Hernandez-Ferrer's* fugitive status tolled his term of supervised release. The Court held that the term of supervised release was not tolled during the period in which the defendant had absconded from supervision. *Hernandez-Ferrer*, 599 at 70. There, the First Circuit did not even consider the Supreme Court's holding in *Johnson* as to the tolling of a Defendant's supervised release term because an extended or subsequent confinement was not at play. The Court went ahead and noted the following:

> "The government is correct that imprisonment lasting for at least thirty days, in connection with a different offense, tolls the running of a supervised release

3

term. In this instance, however, the appellant was not detained for the new crime **until after the scheduled expiration date of his supervised release term had come and gone.**"

*Id.* at 67 (emphasis added). Nunez-Perez contends that the time he spent in state custody was not in relation to a different crime within the meaning of the tolling provision. This argument fails from the outset. Under *Johnson* and the plain text of the statute, Nunez-Perez term of supervision began on the date he was freed from confinement, July 18, 2023, and he has not been imprisoned again since then. Like in *Johnson*, here, the second sentence of Section 3624(e), which states that supervision "commences on the day the person is released from imprisonment," is outcome-determinative.

*Hernandez-Ferrer* did not hold that a subsequent time of incarceration would necessarily need to be in relation to a different crime under a Double Jeopardy purview.[1] 18 U.S.C. § 3624(e) tolling provision expressly pauses supervised release during periods of imprisonment of 30 days or more regardless of whether for "Federal, State, or local crime[s]." 18 U.S.C. § 3624(e). Put simply, supervised release does not run during imprisonment and "the statute states no exceptions." *United States v. Jackson*, 426 F.3d 301, 304 (5th Cir. 2005). And "[t]he objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release." *Johnson*, 529 U.S. at 59. By the same token, the Second Circuit relying on *Johnson*, held that "[i]t is therefore reasonable to understand § 3624(e) as requiring that **supervised release commence only when an individual is no**

---

[1] In response to Nunez-Perez's claim that the imprisonment must be for a different crime, it is not a holding but merely dicta. *See Arcam Pharmaceutical Corp. v. Faria*, 513 F.3d 1, 3 (1st Cir. 2007) (Explaining that dicta is neither law of the case nor binding precedent, rather it "compromises observations in a judicial opinion or order that are not essential to the determination of the legal questions before the court").

4

**longer imprisoned by any authority** and is available for supervision by the federal Probation Office." *United States v. Freeman*, 99 F.4th 125, 128 (2d Cir. 2024) (emphasis added).

Furthermore, the need for adequate deterrence is particularly great for a defendant like Nunez-Perez. As noted in the government's motion at ECF No. 211, Nunez-Perez has a history of violence and criminality prior to his incarceration. (ECF No. 66, PSR ¶ 21). Upon his release, he has demonstrated a blatant disregard for the rules and responsibilities of his supervised release. Nunez-Perez's term of supervised release is a component of his federally imposed sentence, which terms he has violated time and time again.

Therefore, the United States hereby requests that this Honorable Court revoke Defendant's supervised release term in accordance with 18 U.S.C. § 3583 and deny Defendant's motion to dismiss and motion to stay the revocation proceeding.

**WHEREFORE**, the United States of America respectfully requests that this Honorable Court deny Defendant's motions at ECF NOs. 210 & 213 and sentence him as outlined in the Government's motion at ECF No. 211. The defendant's continuous and blatant disregard of the terms and conditions of his supervised release for over one year coupled with the danger posed while out on bail warrant a sentence consistent with the Government's position filed at ECF. No. 211.

RESPECTFULLY SUBMITTED,

In San Juan, Puerto Rico, on August 22, 2024.

W. Stephen Muldrow
United States Attorney

*/s Luis A. Valentin*
Luis A. Valentin, G03115
Assistant United States Attorney

United States Attorney's Office  
Torre Chardón, Suite 1201  
350 Carlos Chardón Street  
San Juan, Puerto Rico 00918

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

<i>s/ Luis A. Valentin</i>  
Luis A. Valentin, G03115  
Assistant United States Attorney