IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

```
-----------------------------------
                                   :
UNITED STATES OF AMERICA           :
                                   :
            Plaintiff              :
                                   :
         v.                        : 3:01-cr-00519-JAG-2
                                   :
DAVID RENATO NUNEZ-PEREZ(2)        :
                                   :
            Defendant              :
                                   :
-----------------------------------
```

INITIAL APPEARANCE
REVOCATION OF SUPERVISED RELEASE

Was held Before HONORABLE BRUCE J. MCGIVERIN, U.S.

MAGISTRATE JUDGE sitting in San Juan, Puerto Rico, on July

8, 2024 at 3:15 p.m.

2

1    APPEARANCES:

2

3    FOR THE GOVERNMENT:

4    ANTONIO PEREZ, AUSA

5

6    FOR THE DEFENDANT:

7    KEVIN LERMAN, AFPD

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          MR. LERMAN: Judge, is it possible to request that

2    Mr. Nunez be unshackled for the hearing?

3          THE MAGISTRATE: Yes, go ahead, please.

4          MR. PEREZ: Good afternoon, Your Honor, for the

5    record, AUSA Antonio Perez on behalf of the United States

6    and we are ready to proceed.  Sorry about that.  This

7    microphone is very sensitive.

8          THE MAGISTRATE: Okay, good afternoon to everybody.

9    Good afternoon, Mr. Nunez.  Mr. Nunez, an arrest warrant was

10   issued because the Probation Officer has filed a motion

11   alleging you have violated your supervised release

12   conditions.

13        Before we go any further, I would like to get some

14   clarification from the government and the Probation Office.

15   This motion alleging supervised release violations was filed

16   in a civil case, a habeas case that Mr. Nunez had filed and

17   there's a long history to that case but as I understand it

18   and if I'm understanding it incorrectly, somebody please

19   enlighten me.

20        Mr. Nunez had a federal conviction, a carjacking

21   conviction, and there was a supervised -- and he served a

22   sentence for that and there's a supervised release term.

23        So, is this motion or the violations of the supervised

24   release term that are alleged in this motion, do they

25   pertain to that federal supervised release term?

1          MR. PEREZ: Yes, that's my understanding, Your

2     Honor.  I unfortunately do not have -- I have not traveled

3     with this case that long.  I'm just the duty prosecutor so I

4     just started this today but my understanding is that it

5     pertains to the supervised release in 01-519.

6          Probation filed it in a civil case because I guess in

7     the civil case it was essentially released because he was

8     serving I think a State sentence in a civil and he filed for

9     habeas and so --

10          THE MAGISTRATE: He prevailed on that, right?

11          MR. PEREZ: He prevailed on that and so the Judge

12     in that civil case essentially and said, "well, now you're

13     on supervised release for the federal sentence."  So, my

14     understanding is that these violations really pertain to his

15     federal criminal sentence in 01-519.

16          THE MAGISTRATE: If that is the case, my next

17     question would be why wasn't this motion filed in that

18     criminal case.  I mean because as I understand it, it is

19     alleging violations of the supervised release in that case,

20     so isn't it -- why wasn't it filed in that case?  So, anyway

21     --

22          MR. CARRILLO: If I may, Your Honor.

23          THE MAGISTRATE: Yes.

24          MR. CARRILLO: United States Probation Officer

25     Ricardo Carrillo for the record.  It is our understanding

1    at the Probation Office that Mr. Nunez Perez is released

2    pending appeal and that was ordered by Judge William Young

3    in the civil case and it was in order to notify any

4    violations to him directly through that case and that's why

5    we filed motions in that civil case, Your Honor, in

6    accordance with the order issued by Judge Young.

7            THE MAGISTRATE: Okay, so but what has he violated?

8    Has he violated his supervised release conditions in his

9    federal case or his bail on appeal conditions in the civil

10   case or both?

11           MR. CARRILLO: He was released, Your Honor, with

12   the conditions imposed on his supervised release as

13   conditions of release pending the appeal and that is what he

14   allegedly violated, Your Honor.

15           THE MAGISTRATE: So, is he serving a federal

16   supervised release term in what was it, Criminal 01-519, is

17   that it?

18           MR. CARRILLO: Not technically, Your Honor.

19           THE MAGISTRATE: Why not?

20           MR. CARRILLO: Because Judge Young's ordered when

21   he was ordered released pending the appeal and it is our

22   understanding at the Probation Office that that does not

23   count for his supervised release.

24       I could be wrong, Your Honor.  It was the understanding

25   that my supervisors provided me with when assigning the case

1   to my supervision.

2          THE MAGISTRATE: So, in that case what I think we

3   have in front of us is not as the motion says, violation to

4   supervised release conditions but violations of bail on

5   appeal.

6          MR. CARRILLO: Yes, Your Honor, if I'm not mistaken

7   the motion says, "conditions of release", if I'm not

8   mistaken.

9          THE MAGISTRATE: It says, "supervised release" and

10   it says, "violations of release conditions" right in the

11   first paragraph.  It says that he was sentenced to 120

12   months imprisonment for a federal carjacking followed by a

13   five year term of supervised release, which led me to

14   believe that that's what we were dealing with here.

15      I don't believe it says anything about conditions of

16   his bail.  Anyway, that's, so I understand that's the

17   Probation Office's view of it.  Let me hear the defense's

18   view of what the posture of this whole thing is.

19          MR. LERMAN: Yes, we very much assured that that

20   question of which conditions are being alleged he violated

21   is the dispositive issue for today.  We do think that

22   there's a possibility that essentially when Mr. Nunez is

23   released under the Rules of Appellate Procedure, Rule 23,

24   that he then began his supervised release term in the

25   federal matter.

1    So, if Probation is alleging violations, then this

2    Court could have jurisdiction to look at those under the

3    supervised release conditions.

4    We do think that if it is alleged as a bail violation

5    and there's a lot more at risk because in this case one of

6    the major issues that Judge Young considered when he granted

7    Mr. Nunez a pre-adjudication release and there is an appeal

8    still pending before the First Circuit which the Respondents

9    filed and we contacted them --

10    THE MAGISTRATE: That Respondents is the Puerto

11    Rico Department of Justice?

12    MR. LERMAN: That's correct.  The main respondents

13    are with the warden, where Mr. Nunez was previously

14    detained, so almost exactly a year ago and other officials

15    of the Commonwealth of Puerto Rico.

16    There is a much more dire situation and even if this

17    Court is adjudicating this as an allegation of supervised

18    release, then we still don't know how the Marshals would

19    deal with any remand order and then Mr. Nunez would be back

20    in the same place that he was since 2012, not receiving any

21    form of treatment for his liver disease that he's undergoing

22    treatment now.

23    He has a couple of days left of an 84-day treatment

24    with the medication (Inaudible) and we think that's one of

25    the things that the Court might have to consider today and

1   so we'd like to argue for conditions today but I understand

2   that I'm starting to answer another question that wasn't

3   what Your Honor asked.  It was just about what conditions

4   are alleged to be violated today.

5          THE MAGISTRATE: Okay and what is your take on it?

6   I mean what is your – are you here -- do you see yourself

7   here as defending the violations of bail or violations of

8   supervised release?  It's not a matter of clarity to me but

9   I'm looking for clarity.

10         MR. LERMAN: It's not for me either, Your Honor,

11  which is why I thought that I don't -- I think it would be

12  desirable not to settle that question today but I think it's

13  more likely that this motion was filed as an allegation of

14  violations of supervised release by the Probation Officer

15  without participation of the other party in this case who is

16  represented by the Puerto Rico Department of Justice whom we

17  notified, we spoke to by phone.

18      We have an e-mail record with Diana Perez Carlo, who

19  has been representing the Respondents.

20         THE MAGISTRATE: So what you're telling me is if

21  it's treated simply as a violation of bail and his bail is

22  revoked, that he would be remanded to the Puerto Rico Prison

23  System.

24         MR. LERMAN: I think that's very possible.  The

25  release order from Judge Young that was issued last summer,

1   says that he's released into the custody of the Attorney

2   General.

3        So, I think that I'm not sure how that would be

4   interpreted by the U.S. Marshals or whether they would

5   ultimately bring him but I think that it's worth considering

6   that the record in this case establishes that that is the

7   last place that he should be brought, especially with his

8   record of really extraordinary adjustment positively in the

9   community over the last --

10       THE MAGISTRATE: Let me ask you this.  He was

11  sentenced to ten years in 2002 in the federal case and so I

12  assume he served about ten years and so he was probably

13  released in 2012 or did he go immediately into the State

14  system and answered some State charges or was he in the free

15  community after 2012 and before he was arrested or let's say

16  --

17       MR. LERMAN: Your Honor, he was in custody

18  uninterrupted for close to a quarter of a decade.  So, he

19  was -- he pleaded guilty in Federal Court of the ten year

20  sentence, was brought to trial in the State Court and that's

21  where he suffered the convictions which violated double

22  jeopardy and where he --

23       THE MAGISTRATE: And he was released in there on

24  Judge Young's order in 2023, about a year ago, right?

25       MR. LERMAN: That's correct on July 18th of --

1    THE MAGISTRATE: So one way to look at it would be
2  that he started serving his federal supervised release at
3  that point although the Probation Officer does not see it
4  that way.
5    The other way to look at it is he hasn't started
6  serving that yet.  He's just simply on bail because of this
7  habeas action but go ahead.
8    MR. LERMAN: No, Your Honor, you know, this -- I'm
9  equally confused. I guess I --
10    THE MAGISTRATE:  I'm just glad it's not just me.
11    MR. PEREZ: It just hit me that this is a civil
12  case.  I'm not sure I should be making representations
13  because we're not a party.  The United States is not a party
14  to the civil case.
15    Nevertheless, I see it more as the first scenario where
16  the Judge essentially said, "for the time being I'm
17  releasing him based on his federal supervised release
18  conditions and so the federal supervised release wouldn't
19  have started."  I think the motion would probably have been
20  best filed in the Federal case.
21    THE MAGISTRATE: It could be filed in both.  I
22  mean, or it will be violations of supervised release
23  conditions and also violations of the bail conditions and
24  that's another way of looking at it.  Okay.
25    MR. PEREZ: It could, Your Honor, yes.

1          THE MAGISTRATE: Okay, here is what I'm going to do

2     absent -- I'm going to look at it that way.  I'm going to

3     look at this motion.  I'm going to direct the Probation

4     Officer to file this motion in the underlying federal

5     criminal case and it is also -- I am going to treat it as a

6     motion to violation of supervised release conditions.

7          Now, the Probation Officer believes for whatever

8     technical reason that I'm not aware of that the supervised

9     release term has not in fact begun to run.

10          Then the Probation Officer can file that motion and

11     also file an informative motion, you know, to the Court

12     stating their view and then, of course, you know, having

13     considered that, we can make whatever modifications to the

14     proceedings that need to be made.

15          MR. CARRILLO: Your Honor, if I may.

16          THE MAGISTRATE: Yes.

17          MR. CARRILLO: We have no issue with filing the

18     motions in the criminal case.  I just wanted to clarify that

19     the motions were filed in the civil case because --

20          THE MAGISTRATE: Judge Young had directed that.

21          MR. CARRILLO: Yeah, you're right.

22          THE MAGISTRATE: Okay.  So having said that, I'm

23     going to proceed with the initial on those lines.

24          So, Mr. Nunez, the Probation Officers filed a motion

25     alleging you of violating your release conditions and in

1  particular, the motion alleges that you violated, first the

2  conditions that prohibit you from unlawfully using or

3  possessing a controlled substance and next, the conditions

4  that required you to submit to drug testing and drug

5  treatment as directed by the Probation Office.

6      If the Court finds that you violated your supervised

7  release conditions, the Court may revoke your supervised

8  release and impose a prison term of up to five years.

9      I remind you that you have a right to have an attorney

10 of your own selection to represent you in this case.

11     However, if you're unable to afford an attorney, the

12 Court will appoint one to represent you and the Court

13 already has appointed the Office of the Federal Public

14 Defender who will continue to represent you.

15     You have the right to remain silent.  Anything you say

16 either in Court or outside of Court, can be used against

17 you.  In the event you've already given a statement, you

18 have the right to make no further statements from this point

19 forward.  Now, that's as to your federal criminal case.

20     Now, as to the case before Judge Young and the sentence

21 that you were serving with the Court, with the Commonwealth

22 of Puerto Rico, then I understand the same violations

23 constitute an allegation that you have violated your bail

24 conditions in that case and if the Court finds ultimately

25 that you have violated your bail conditions, the Court can

1    revoke your bail and remand you to continue serving whatever

2    may remain or left of your sentence pending the appeal in

3    that case.

4         Now, I understand, do the parties want to be heard as

5    to his release or detention pending further proceedings as

6    to supervised release violations?

7         MR. LERMAN: Yes, Your Honor.  The defense is

8    requesting that the Court release Mr. Nunez Perez today on

9    conditions -- on a combination of conditions that would

10   address, we believe concerns that U.S. Probation has and

11   that we expected that the Court may have in looking at the

12   allegations and positive tests throughout the course of

13   treatment that Mr. Nunez has engaged in and we'd like to

14   make a couple of points and then subscribe to the Court what

15   that first step in the release proposal would entail and I'd

16   like to just start with the release last summer in the

17   motion for bail pending appeal.

18        Essentially the Court was making the 3143 determination

19   that Mr. Nunez Perez did not pose a danger of flight risk at

20   that time and based on the record before the Court and the

21   information that we'll proffer, we ask the Court to find

22   that he would not be a danger or a flight risk if he were

23   released to the community pending further proceedings here

24   and just a couple of very brief points.

25        Mr. Nunez was released in July after, like I said,

1    nearly a quarter of a century in prison without any history

2    of violence, without any history of violence since he was

3    released to the community and some of these, Officer

4    Carrillo can correct me if I'm mistaken but we understand

5    that he's had a record since he was released.

6         He went to a brief in-patient treatment program.  In

7    April was released to an intensive out-patient program that

8    was three days per week at Clinica Medica Psicoperapedutica

9    and that's in the Arecibo area.

10        He's still attending that outpatient program.  So after

11   the intensive three day a week period was converted to one

12   day a week, he has appointments that are set for July 10th,

13   July 17th and July 24th and he's also managed to obtain and

14   retain a number of re-entry equities in the community.

15        Since December of last year, he's been employed at

16   Experts LLC, which is a disaster recovery and maintenance

17   organization.  He works there close to forty hours per

18   week.

19        He's taken out a personal loan to help with his living

20   expenses and his auto expenses.  This is after multiple

21   decades in prison.

22        So, he's really starting from scratch and moving

23   mountains in that process.  This week he's about to

24   complete, I believe I mentioned this and my apologies if I'm

25   repeating, a roughly 84-day treatment for a virus affecting

1    his liver.

2        He's been seen by two different liver specialists.  He

3    started off at the Centro Medico but was sent also to

4    Auxilio Mutuo.  There he's been seen by their transplant

5    center.

6        Once he completes that treatment this week, he'll have

7    to attend additional treatment appointments and do new

8    laboratories to assess his liver enzymes and in order to

9    refer him to an additional higher level of care, he had

10   secured an admission appointment to a ten day in-patient

11   treatment program called Compromiso de Vida, which is

12   through Iniciativa Comunitaria.

13       We provided that this morning to USPO Carrillo.  We

14   provided that to the State Prosecutor, Ms. Perez Carlo, and

15   we provided that to the government here.

16       We understand that there may be substantive concerns

17   but we are hoping to avoid any logistical issue as to

18   whether his admission is confirmed.

19       We've provided his insurance information.  So, he's

20   pre-screened.  He would arrive there tomorrow morning.  The

21   only time that he may request formally to leave the facility

22   would be for a treatment with his medical specialist.

23       So, one of the concerns that we believe that the

24   government and Probation may have is why send him to another

25   treatment program if he's been to Santisima Trinidad, which

1    is an on premises known medical facility and he did a short

2    non medical detox in April but one of the things I think

3    that Probation can corroborate is that Mr. Nunez will be

4    going through a lot of changes since he's returned to the

5    community.

6        He's had to overcome a lot of obstacles and, you know,

7    his reliability and his commitment is really extraordinary.

8    He came to our office early this morning.  We had gotten in

9    touch with Court staff hoping to avoid the six or seven hour

10   processing delay.

11       He drove out from Arecibo.  Got up at 5:00 a.m. to get

12   here in time and present himself and this is after we

13   arranged with Probation and the Marshals last week.

14       On July 3rd we had numerous phone calls because he was

15   prepared to turn himself in but it was agreed that he could

16   present himself in person so that he could get this case

17   adequately addressed in the hope of not irreparably harming

18   the assets that he's built up in the community and to

19   demonstrate his respect for the process.

20       He knows that he needs to improve.  He knows that he's

21   had struggles.  No one is asking Probation or the government

22   to accept any form of substance use that's not lawful and

23   he's here humbly before the Court asking for this

24   opportunity for more treatment.

25           THE MAGISTRATE: What conditions of release would

1   you be recommending?

2           MR. LERMAN: We would be requesting that in

3   addition to the mandated treatment through the Clinica

4   Medica Psycoteorapetica --

5           THE MAGISTRATE: So, is that in-patient or out-

6   patient?

7           MR. LERMAN: That one is currently out-patient,

8   Your Honor.  The in-patient -- may I approach to provide the

9   Court --

10          THE MAGISTRATE: Does the government have a copy of

11  this?

12          MR. LERMAN: Yes.

13          MR. PEREZ: Is this what you sent me?

14          MR. LERMAN: What I handed Your Honor and that

15  information is available on the Court website is through the

16  program known as Compromiso de Vida, which is in Rio Piedras

17  in the San Juan area. That's a ten day program.

18      It has a full time treatment counselors.  They call it

19  this medical staff.  It accepts individuals that take

20  additional medications like Mr. Nunez, he takes six

21  different medications at this point, some of them for

22  physical ailments, the one to treat the viral liver disease

23  and additional mental health medications.

24      So, they can recommend additional treatment.  I didn't

25  mention that part significantly because obviously that has

1  to deal -- that has to go in coordination with Officer

2  Carrillo in the Probation Office but it would be at least

3  once he completed those ten days, he would continue

4  undergoing drug screening and he would return to the program

5  that he's currently in; that he's been in for the last

6  roughly month and a half, two months and we hope and believe

7  that he continue to make progress through that.

8        THE MAGISTRATE: Okay, let me hear from the

9  government, please.

10        MR. PEREZ: Yes, Your Honor.  Your Honor, this is a

11  supervised release revocation but the burden is on the

12  defense to prove by clear and convincing evidence that he's

13  not a danger to the community or a risk of non appearance.

14        The defendant was convicted in 1996 of offenses that

15  involved conspiracy, second degree murder and Puerto Rico

16  weapons violations.

17        He was released on May 1st, 2001 and on June 26, 2001,

18  so less than two months later, he committed the offense for

19  which he is on supervised release which was an armed

20  carjacking which also resulted in the death of a person.

21        He began his supervised release in this case on July

22  18, 2023, less than a year before today and at that time

23  they filed motions at docket numbers 87, 89 and 90, which

24  the Probation Officer filed in the civil case which will

25  then be filed in the criminal case.

1    I counted fifteen positive drug tests and one failure

2  to test.  So, 16 violations in less than a one month period.

3  Probation has exhausted their resources and giving him the

4  opportunity to engage to be in in-patient treatment, out-

5  patient treatment, a detox program but the defendant has

6  shown an unwillingness or an inability to comply with his

7  conditions of release and so we have a defendant who's been

8  convicted of two violent crimes that resulted in death and

9  that in the time that he's been out, he's committed 15

10  violations in less than a year.

11    Your Honor, he cannot meet that burden of showing by

12  clear and convincing evidence that he's not a danger to the

13  community or a risk of flight.  So, for those reasons we ask

14  he be detained.

15    THE MAGISTRATE: Okay, let me hear from the

16  Probation Officer, please.

17    MR. CARRILLO: Good afternoon, Your Honor.  United

18  States Probation Officer Ricardo Carrillo, once again.

19  Again I've always deferred to the Court and will abide by

20  any

21  order issued by the Court and, Your Honor, our worry is that

22  like AUSA Perez stated, we have provided Mr. Nunez with

23  out-patient treatment, intensive out-patient treatment,

24  in-patient treatment.

25    We've also provided him with the opportunity to submit

1    to a voluntary detox at Hospital San Juan Capestrano and he

2    continues to test positive to cocaine and Fentanyl which are

3    in our view, are very dangerous substances.

4        Again, if he is ordered released, we would only like to

5    be given all access to the treatment but, yes, our worry

6    that his substance abuse can continue is very, Your Honor.

7            THE MAGISTRATE: Okay, do you want to respond to

8    any of that?

9            MR. LERMAN: Yes, just briefly, Your Honor.  Just

10   two points.  The first is that, look, none of us here are

11   treatment specialists and that's why we had to rely on

12   treatment specialists and one of the things that we

13   understand from working with the various specialists that

14   have been treating Mr. Nunez Perez is that sometimes you

15   have to keep trying different modalities.

16       So, it's like if someone has high blood pressure and

17   one medication doesn't work, you try an additional

18   medication.  One of the things that the Court will observe

19   from Probation's equal motion was that he, Mr. Nunez Perez,

20   was placed in a pretty short term at detox and it was a

21   hospital based program.

22       Other that was because Probation, in consultation with

23   our office and as Probation noted in the motions that in

24   that motion that we have been working hand and hand and we

25   consulted a social worker who is in a Phd program who was in

1    our office, Jose Ortiz, who evaluated a lot of miscellaneous

2    and medical records and helped us place him in the medical

3    based detox program.

4        And that was to preserve his employment because with

5    these various re-entry equities, a person's ability to avoid

6    relapse, to remain on a path of a law abiding life

7    increased.

8        So, if he's released after a three to nine month prison

9    sentence, homeless without an automobile and without a job,

10   the risks of relapse are even higher.  So this is part of

11   our application is a harm reduction approach and the second

12   point, just really briefly and I can't fault the federal

13   prosecutor for not being familiar with the case but I would

14   just like to point out that in our other briefing and in the

15   District Court briefing, that the conviction that is under

16   appeal right now, was for involuntary manslaughter or

17   misdemeanor, he was in the rear seat and that the driver

18   used to run someone over.

19       Not to make light of that but just so the Court has a

20   full picture of what transpired over twenty years now before

21   Mr. Nunez really was well underway on his path.

22           THE MAGISTRATE: So are you proposing an in-patient

23   drug treatment program along with his others?

24           MR. LERMAN: That's correct, Your Honor.  He would

25   start a new in-patient program tomorrow before 9:30 a.m. and

1   that's the pamphlet that we provided the Court which is

2   called Compromiso de Vida and it's really one of the leading

3   evidence based approaches and we also don't fault Probation

4   for having a limited supply of programs to refer people to.

5      It's a difficult situation in Puerto Rico and it took a

6   lot of different consultations to arrive at this referral

7   and no referral is a silver bullet but --

8         THE MAGISTRATE: This referral is something that

9   Probation offers and can be a part of, coordinate, help

10   coordinate and have access to?

11         MR. LERMAN: I think Officer Carrillo could respond

12   better than we can but look, the medical based, with the

13   hospital based program last time Officer Carrillo we

14   understand was able to have full access to Mr. Nunez and I

15   think it's a pretty common occurrence or a non-contract

16   provider because then otherwise anyone on supervision would

17   be limited to two or three programs and as long as Mr. Nunez

18   applies his insurance, which he's done and maintained active

19   medical insurance and so it would be just like one Probation

20   is paying for except it would be funded by his insurance.

21         THE MAGISTRATE: Okay, now there's one other

22   missing link that the government has alluded to it but I'm

23   going to treat this as a supervised release and failed

24   a bail violation when with the parties we haven't heard from

25   and that is the respondent in the civil case.

1    I don't see how I can make a decision as to bail or

2    release in that case without hearing from them.

3         MR. LERMAN: Your Honor, I understand they were

4    provided the contact from the Court.  I think I got an e-

5    mail from respondents at the -- I'm sorry, yeah, so they

6    responded to the Courtroom Deputy at 3:34 asking if they

7    should be present for this hearing.

8         We advised them regarding the request from Mr. Nunez to

9    turn himself in on the arrest warrant.  They indicated they

10   wouldn't be present at this week's hearing but he hoped the

11   hearing would be this morning and we advised them ahead of

12   this hearing so I think that, you know, at this point bail

13   considerations --

14        THE MAGISTRATE: Okay, let me ask the Deputy Clerk,

15   has the respondent in the civil case been notified of this

16   hearing and what was their views whether they want to show

17   up and be heard?

18        THE CLERK: This is (Inaudible) of being heard.  I

19   have not received anything from respondent.  Neither has

20   (Inaudible) hearing.

21        THE MAGISTRATE: But were they notified?

22        THE CLERK: Not be the Clerk's Office, no, Your

23   Honor.

24        THE MAGISTRATE: They were not notified of this

25   hearing.  Okay.  All right.  I think the other case, there

1    is any other procedural issue.  I know how it works in the

2    alleged violations of supervised release conditions.

3         If he's detained, he gets a preliminary hearing and if

4    not, he's referred directly to the presiding District Judge

5    for a final revocation hearing.

6         As to bail, that's usually something a Magistrate Judge

7    determines and then if you don't like that decision, you can

8    appeal it to the District Judge but this is not a bail

9    handling an appeal of a habeas corpus.

10         THE CLERK: I'm sorry, Your Honor, to interrupt.

11    They were notified by the (Inaudible) Rivera-Rivera, of the

12    initial appearance but they replied at 3:35 p.m. asking if

13    they were needed here and the hearing was already underway.

14         THE MAGISTRATE: I see, okay.  What I would like to

15    do is give them the opportunity to be heard.  So, okay, this

16    program, remember this is something that he's ready to go

17    into at this time?

18         MR. LERMAN: Yes, Your Honor, he is.  We've

19    discussed that at length and our staff at the Federal Public

20    Defender's Office has provided his detailed information to

21    the staff at the program.

22         By the time they were ready to do the pre-screening

23    interview, he had already surrendered at the Hato Rey

24    Marshal's building but they did interview his mother,

25    Marilyn, who he lives with and so he's prepared to go in.

1  There's a list that they –

2       THE MAGISTRATE: I mean, can he go in anytime this

3  week or next week or whenever he's ready?

4       MR. LERMAN: That would be a matter of whether they

5  have X-space.  Actually in between this program there's also

6  another program that's affiliated with Iniciativa

7  Comunitaria which is who operates that program that we

8  provided.

9     So, there would be other beds if the Court released him

10  today with a follow up order based once if Respondents chose

11  to respond.  We would just respectfully request that if the

12  Court wishes to and if I can just add, in addition to the

13  Court's staff notification of Respondents, we did speak and

14  I'm just pulling out the e-mail that I have from the

15  Prosecutor Diana Perez Carlo who wrote to us at 10:39 a.m.

16  this morning and indicated the Department of Justice would

17  not be appearing at Monday's hearing and would not assume a

18  position regarding Mr. Nunez Perez's arrest warrant.

19     So and that was after we spoke.  That was after co-

20  counsel Franco Perez talked with them last Wednesday, which

21  was the third.

22       THE MAGISTRATE: Okay, nevertheless that's not

23  something that Respondent has made to the Court.  That is

24  not a representation that they've made to the Court.  So,

25  what I am going to do is, I am going to release him to this

1  program, an invitation program, and I would ask the

2  assistance of the Probation Office to help coordinate this.

3      At the same time I am going to set a Preliminary

4  Revocation Hearing and a Bail Revocation Hearing in the

5  civil case and I'm going to set that, both of those, for

6  this Thursday at 10:00 a.m.

7      I will ask the Deputy Clerk to notify the respondent in

8  the civil case that this Bail Revocation Hearing is going to

9  be held and they are a party in that case, so they're

10 expected to attend and if they're unable to attend, to file

11 a motion stating their position but much better that they

12 attend.

13     Okay, so is there anything else as to this case at this

14 time?

15         MR. LERMAN: Can I just clarify that I understood

16 that, Your Honor.  So the Court is releasing him today but

17 then will have him back for a Preliminary Hearing?

18         THE MAGISTRATE: Correct.  My alternative is, the

19 other alternative is I'm going to temporarily detain him and

20 we'll have a Preliminary Hearing.

21         MR. LERMAN: I understand.  Thank you.

22         THE MAGISTRATE: Counsel.

23         MR. PEREZ: Nothing else on behalf of the

24 government, Your Honor.

25         THE MAGISTRATE: All right.  Thank you.

1          MR. LERMAN: Thank you, Your Honor.

2          MR. PEREZ: Thank you, Your Honor.  Have a nice

3    afternoon.

4                    (The hearing ended at 3:57 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1    U.S. DISTRICT COURT)

2    DISTRICT OF PUERTO RICO)

3

4         I certify that this transcript consisting of 28 pages

5    is a true and accurate transcription to the best of my

6    ability of the proceedings in this case before the Honorable

7    Magistrate Judge Bruce J. McGiverin on July 8, 2024.

8

9

10

11

12   S/Boabdil Vazquetelles

13   Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25
```